```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF MICHIGAN
                    SOUTHERN DIVISION
```

ALYSSA ELSEY, O/B/O
MICHAEL ELSEY

       Plaintiff,       CIVIL ACTION NO. 10-12334

  v.               DISTRICT JUDGE STEPHEN J. MURPHY, III

                  MAGISTRATE JUDGE MONA K. MAJZOUB
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**RECOMMENDATION**: Plaintiff's Motion for Summary Judgment should be DENIED, and that of Defendant GRANTED, as there was substantial evidence on the record that claimant retained the residual functional capacity for a limited range of light work.

                   *   *   *

      Plaintiff, Michael Elsey, filed applications for Social Security Disability income Benefits (DIB) and Supplemental Security Income (SSI) benefits on March 7, 2007, alleging that he had become disabled and unable to work on June 30, 2006, at age 47, due to severe bilateral hip pain. Benefits were denied by the Social Security Administration. A requested <u>de novo</u> hearing was held on May 4, 2009, before Administrative Law Judge (ALJ) Patricia S. McKay. The ALJ found that the claimant retained the residual functional capacity to perform a limited range of light work. Michael Elsey died seventeen days after the ALJ's decision. The

cause of death is not in the record. Michael's daughter, Alyssa Elsey, was substituted as plaintiff. The Appeals Council declined to review the ALJ's decision, and Alyssa Elsey commenced the instant action for judicial review of the denial of benefits[1]. The parties have filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of DIB benefits was supported by substantial evidence on the record.

Michael Elsey was 49 years old at the time of the administrative hearing (TR 40). He had a twelve grade education, and had been employed as a machine operator during the relevant past (TR 42). Claimant was required to remain on his feet for extended periods. He had to constantly bend down and reach over his head. He was sometimes required to lift upwards of 50 pounds on a regular basis (TR 56). Claimant stopped working in June 2006, due to severe hip pain, which prevented him from sitting, standing or walking for prolonged periods (TR 50). Despite numerous hip surgeries (TR 160-190), Michael Elsey testified that he remained

---

[1]Alyssa Elsey has standing to pursue a DIB claim on her father's record because she was under the age of 18 during her father's alleged period of disability. As a result, she would likely be eligible for child benefits if the Commissioner's DIB decision were reversed. Since Mr. Elsey's wife was living apart from him at the time of his death, it is also likely that any underpayment of DIB benefits would be recoverable by Alyssa. See 20 C.F.R. 404.503(b)(2)(child of deceased number holder who was entitled to benefits on his record may recover underpayment if there is no spouse with higher priority). On the other hand, Alyssa cannot pursue her father's SSI claim because underpayments cannot be made to the estate of the deceased or to survivors, other than a spouse or parent. See 20 C.F.R. 416.542(b)(4). Ms. Elsey lacks standing to challenge the denial of SSI benefits because prevailing in this Court would not provide her any redress. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992)(noting that it must be likely that the plaintiff's injury-in-fact would be redressed by a favorable decision).

disabled as a result of severe bilateral hip pain (TR 45). He spent the majority of his days in a recliner or lying on a couch (TR 45). Claimant lived with his mother, who needed his care after suffering a stroke (TR 41). He did some light housekeeping and simple cooking (TR 122, 124). Michael Elsey relied on a relative to take him grocery shopping, but he did not do any bending to get food off the shelves (TR 47, 54). He asserted that he needed to rest for extended periods after going grocery shopping (TR 54).

      A Vocational Expert, Michael Rosko, classified claimant's past machine operation work as light to medium, semi-skilled activity, which did not impart any transferable skills to lighter work (TR 56-57). The witness testified that there would have been no jobs that claimant could have performed during the

relevant period if his testimony were found to be fully credible[2] (TR 60). If he were capable of light work, there were numerous unskilled assembly, packaging, sorting and visual inspection jobs Plaintiff could have performed with minimal vocational adjustment (TR 57-58).  These jobs provided a sit-stand option and allowed the use of a cane (TR 58).

## LAW JUDGE'S DETERMINATION

The Administrative Law Judge found that Michael Elsey was impaired as result of a history of avascular necrosis with surgical fusion of the right hip, degenerative joint disease/osteoarthritis of both hips, and post left sided total hip arthoplasty, but that he did not have an impairment or combination of impairments severe enough to meet or equal the Listing of Impairments. The ALJ recognized that claimant's hip pain prevented him from sitting or standing for extended periods, and that he needed a cane to walk. Nevertheless, the ALJ found that he retained the residual functional capacity for reduced range of light work activity.

---

[2]The witness explained that claimant's alleged inability to remain on his feet for prolonged periods and his need to lie down on a regular basis would preclude all work activity (TR 60).

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence is more than a scintilla but less than a preponderance. It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Kirk v. Secretary, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). This court does not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. See Brainard v. Secretary, 889 F.2d 679, 681 (6th Cir. 1989); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. Kirk, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if even substantial evidence also supports the opposite conclusion, Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc), Casey v. Secretary, 987 F.2d 1230 (6th Cir. 1993), and even if the reviewing court would decide the matter differently, Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

Alyssa Elsey maintains that substantial evidence does not exist on the record supporting the Commissioner's determination that her father retained the residual functional capacity for light

work activity that provided a sit-stand option and allowed the use of a cane.  She also argues that the ALJ had improperly discounted the disability opinion rendered by her father's treating doctor.  Defendant countered that the disability opinion was properly discounted by the ALJ since it did not relate back to a time prior to the expiration of Michael Elsey's insured status in March 2009.

## DISCUSSION AND ANALYSIS

Substantial evidence existed on the record supporting the Commissioner's conclusion that claimant retained the residual functional capacity for a restricted range of light work.  The medical evidence of record revealed that Michael Elsey enjoyed good results from his multiple hip surgeries.  Dr. Satish Mehta, a treating physician, reported in October 2008, that the claimant had normal ranges of joint motion and strength without any tenderness, swelling, or deformity (TR 217, 219, 221).  Claimant walked with a normal gait, and he did not suffer from any neurological deficits (TR 217, 219, 221).  Dr. Mehta classified claimant's health status as "good" (TR 216, 218).

Dr. R. Patel, a consultative examiner, noted during a May 2007, evaluation that Mr. Elsey could squat and arise about halfway (TR 196).  There were no signs of hip tenderness, effusion, deformity or swelling.  Range of hip motion was within normal limits bilaterally (TR 196). Claimant did not exhibit any neurological deficits, as sensation, motor power and reflexes were all normal (TR 196).  Dr. Patel believed claimant could walk up to 3 miles, despite a slight limping gait (TR 195).

Dr. Joel DeGuzman, a pain management specialist, examined claimant on March 24, 2009, and reported that claimant had a slight antalgic gait with reduced range of motion (TR 203). The doctor, however, noted full muscle strength, intact sensation and normal reflexes (TR 203). There was no objective medical evidence suggesting that claimant suffered severe side effects from pain medications, or that he needed to rest frequently throughout the day. The ALJ also relied on Mr. Elsey's ability to perform small household repairs, and do the laundry in the basement (TR 25). The ALJ took into consideration claimant's objectively proven functional limitations by restricting him to jobs providing a sit-stand option and allowed the use of a cane (TR 22)

Alyssa Elsey relies heavily upon the fact that Dr. Nwanneka Odumonu completed a residual functional capacity form questionnaire in April 2009, indicating that her father was unable work due to an inability to sit, stand or walk for any length of time (TR 232). It is well settled that opinions of treating physicians should be given greater weight than those of one-time examining doctors retained by the government. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). However, the opinion of a treating physician is entitled to deference only if his clinical findings are uncontradicted by substantial medical or other evidence, and if the opinion is based on detailed, clinical, diagnostic evidence. Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985). Since Dr. Odumonu offered little objective evidence during the relevant period to support his April 2009, statement of

7

disability[3], his opinion need not have been given any special weight. Miller v. Secretary, 843 F.2d 221, 224 (6th Cir. 1988). Under these circumstances, the totality of the evidence must be considered. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

It is the rare case, the exception, in which every piece of evidence points incontrovertibly toward a decision to deny benefits. There was evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. Beavers v. Secretary, 577 F.2d 383 (6th Cir. 1978). See also Williamson v. Secretary, 796 F.2d 146, 150 (6th Cir. 1986).

By establishing that Mr. Elsey could not return to his past relevant work, the Plaintiff here effectively shifted to the

---

[3]The ALJ rejected the doctor's disability opinion, setting forth persuasive reasons for doing so (TR 24). The ALJ expressed concern about the lack of medical documentation to support the opinion. Moreover, when asked what the earliest date the disabling restrictions applied, the Dr. Odumonu wrote "today" (i.e. April 27, 2009) (TR 234). This suggested to the ALJ that the disability statement was prepared for the sole purpose of helping the claimant qualify for benefits. Indeed, it appears the doctor's opinion was primarily based on Plaintiff's subjective complaints, rather than the objective medical evidence.

Commissioner the burden of proving that he had the vocational qualifications to perform alternative jobs in the economy, notwithstanding his various impairments. The Commissioner, however, met his burden of proving the existence of jobs which accommodated claimant's known restrictions. In response to a hypothetical question that took into consideration claimant's educational and vocational background, along with his significant impairments[4], the Vocational Expert testified that there were numerous unskilled assembly, packaging, sorting and visual inspection jobs Plaintiff could have performed with minimal vocational adjustment (TR 57-58). These jobs provided a sit-stand option, and allowed the use of a cane (TR 58). Given the objective clinical findings of the examining physicians of record during the relevant period, substantial evidence existed on the record that Plaintiff retained the residual functional capacity for a restricted range of light work activity.

In sum, the Commissioner's decision to deny benefits was within the range of discretion allowed by law and there is simply insufficient evidence for the undersigned to find otherwise. Accordingly, Plaintiff's Motion for Summary Judgment should be

---

[4] The Administrative Law Judge's hypothetical questions to the Vocational Expert (VE) accurately described claimant's moderate limitations caused by his joint pain. The ALJ reasonably determined that claimant's on-going joint discomfort limited him to jobs that did not involve prolonged walking or standing, exposure to vibrations or walking on uneven surfaces (TR 22). The Sixth Circuit has held that hypothetical questions to experts are not required to included lists of claimant's medical conditions. Webb v. Commissioner, 368 F.3d 629, 633 (6th Cir. 2004). Under these circumstances, the ALJ's hypothetical question accurately portrayed claimant's impairments.

denied, that of Defendant granted and the instant Complaint dismissed.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. United States v. Walters, 638 F.2d 947 (6th Cir. 1981), Thomas v. Arn, 474 U.S. 140 (1985), Howard v. Secretary of HHS, 932 F.2d 505 (6th Cir. 1991). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987), Willis v. Secretary of HHS , 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1 (d)(2) of the Local Rules of the United States District Court for the Eastern District of Michigan, a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                          s/ Mona K. Majzoub
                                          MONA K. MAJZOUB
                                          UNITED STATES MAGISTRATE JUDGE

**DATED: August 22, 2011**

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on his date.

Dated: August 22, 2011        s/ Lisa C. Bartlett
                                      Case Manager